## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

JONATHAN MULLANE,

      Plaintiff,

v.                                                          Case No.  4:21-cv-164-MW/MJF

JAMES ALMON and MICHELE
GAVAGNI,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the court on Defendants' motion to dismiss (Doc. 14).

Plaintiff filed a response in opposition (Doc. 20). Because Plaintiff's claims for

injunctive and declaratory relief are barred by *Younger v. Harris*, 401 U.S. 37

(1971), and Defendants enjoy quasi-judicial immunity from Plaintiff's claims for

damages, the undersigned recommends that Defendants' motion to dismiss be

granted.[1]

---

[1] The District Court referred this case to the undersigned to address preliminary
matters and to make recommendations regarding dispositive matters. *See* N.D. Fla.
Loc. R. 72.2; *see also* 28 U.S.C. § 636(b); Fed R. Civ. P. 72(b).

# I. Background

Plaintiff—a law-school graduate and applicant for admission to the Florida Bar who has not yet taken the Florida Bar examination—commenced this section 1983 action against Defendants Michele A. Gavagni and James T. Almon. Gavagni is the executive director, and Almon is the general counsel, of the Florida Board of Bar Examiners ("the Board"). Plaintiff alleges that Gavagni and Almon violated his constitutional rights because the Board has not approved Plaintiff's application for admission to the Florida Bar.[2]

## A.   The Process for Admission to the Florida Bar

Under the Florida Bar admission rules, law students seeking to apply for admission to the Florida Bar may register with the Board by filing a "Registrant Bar Application," which later must be converted into a "Bar Application" by filing a supplement to the "Registrant Bar Application." Fla. Bar Admission R. 2-21.2. Upon filing a "Bar Application" or a "Registrant Bar Application," the Board initiates a character and fitness investigation. Fla. Bar Admission R. 2-22. For a law student filing a "Registrant Bar Application," the Board will conduct "a basic character and

---

[2] Plaintiff filed a nearly identical lawsuit against, *inter alia*, the Massachusetts Board of Bar Examiners. In that case, the district court in Massachusetts granted the defendants' motion to dismiss based on *Younger* and quasi-judicial immunity. *Mullane v. Mass. Bd. of Bar Exam'rs*, No. 20-cv-11382-DJC, 2021 WL 4132579, at *3, 5 (D. Mass. Sept. 10, 2021).

fitness investigation." Fla. Bar Admission R. 2-21.2. When the applicant files his supplement to the "Registrant Bar Application," the Board updates the character and fitness investigation. Fla. Bar Admission R. 2-22.

An applicant is entitled to admission to the Florida Bar only if he passes the bar examination and "meets the state's 'character and fitness' requirements." *Lawrence v. Schwiep*, No. 4:05-cv-14-RH/WCS, 2005 WL 2491564, at *1 (N.D. Fla. Oct. 7, 2005), *aff'd sub nom. Lawrence v. Rigsby*, 196 F. App'x 858 (11th Cir. 2006); Fla. Bar Admission R. 5-10. The purpose of the Board's character and fitness investigation "is to protect the public and safeguard the judicial system." Fla. Bar Admission R. 1-14.1. Under the Florida Bar admission rules, an applicant seeking admission to the Florida Bar has the burden of establishing his "good moral character, an adequate knowledge of the standards and ideals of the profession," and his fitness "to take the oath and to perform the obligations and responsibilities of an attorney." Fla. Bar Admission R. 2-12.

As a part of the character and fitness investigation, the Board reviews the applicant's background and may conduct an investigative hearing. Fla. Bar Admission R. 3-22. Following any investigative hearing, the Board may determine that the applicant "has established his . . . qualifications as to character and fitness" or "file specifications charging the applicant . . . with matters that, if proven, would preclude a favorable finding by the Board." Fla. Bar Admission R. 3-22.5.

An applicant against whom the Board files specifications is entitled to a formal hearing before the Board. Such an applicant has the right to representation, to call witnesses and introduce exhibits, and to cross-examine witnesses. Fla. Bar Admission R. 3-23.2. At any such hearing, the Board determines, "based on the evidence presented at the hearing, whether the applicant has established his or her character and fitness to practice law." *Lawrence*, 2005 WL 2491564, at \*1. If the Board concludes that the applicant has failed to establish his good character and fitness to practice law, the Board will recommend to the Florida Supreme Court that the applicant or registrant be "denied admission to The Florida Bar." Fla. Bar Admission R. 3-23.6(d). In such cases, the Board must enter findings of facts and conclusions of law. *Id.*

An applicant may request review by the Florida Supreme Court, "which may independently review the record . . . and address all challenges to the Board's determination, including those based on the United States Constitution." *Lawrence*, 2005 WL 2491564, at \*1. The Board's "[f]indings, conclusions, and recommendations are final, if not appealed" to the Florida Supreme Court. Fla. Bar. Admission R. 3-23.7.

**B.     Plaintiff's Application to the Florida Bar**

On February 16, 2018, Plaintiff submitted a petition for admission to the Florida Bar. (Doc. 12 at ¶ 7). On September 7, 2018, Plaintiff filed a complaint which

initiated "non-public and confidential" administrative proceedings against a federal judge. (*Id.* at ¶ 10). On or about April 12, 2018, the Board requested additional information from Plaintiff. (Doc. 14-2). On October 4, 2018, the Board canceled Plaintiff's bar application because Plaintiff failed to respond within 90 days to the Board's requests for information relating to his education, employment, and litigation activity. (*Id.*).

On April 9, 2020, Plaintiff sent a letter to the Board in which Plaintiff indicated that he desired to take the July 2020 Florida bar examination. (Doc. 14-3). On May 11, 2020, the Board responded to Plaintiff's letter and informed Plaintiff that he was required to provide to the Board documents or information. (Doc. 14-4).

On February 18, 2021, the Board served Plaintiff with a "notice to appear for investigative hearing" ("Notice").[3] (Doc. 12 at ¶ 18; Doc. 14-1). In his amended verified complaint, Plaintiff alleges that the "sole purpose" of the proposed investigative hearing was to retaliate against Plaintiff for filing the complaint against the federal judge. (Doc. 12 at ¶ 20). But the Notice identified twelve broad categories

---

[3] Plaintiff mentioned this notice in his complaint and quoted portions of it in exhibits attached to his complaint. (Doc. 3 at 10; Doc. 12 at ¶¶ 13, 18, 23). On a motion to dismiss, a court may consider documents to which a plaintiff refers in his complaint when those documents are central to the plaintiff's claim. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997); *see Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2005).

of issues that the Board wished to address at the hearing. Among other things, the Board stated that it desired to question Plaintiff about:

- Plaintiff's "termination of . . . employment with Kempen & Co. USA";

- Plaintiff's "April 2015 claim for unemployment benefits and [his] receipt of unemployment benefits", "the New York State Department of Labor's August 2, 2016, Notice of Determination of Ineligibility or Disqualification and any related appeals," and "the status of any debts that [Plaintiff owed] relating to unemployment benefits";

- Plaintiff's failure "to disclose on [his] April 16, 2020, Florida Bar Application" his "debt to the New York State Department of labor arising from the Notice of Determination of Ineligibility";

- Plaintiff's failure to disclose his internship with the U.S. Attorney's Office; and

- Plaintiff's failure to disclose "the facts and circumstances, including the final dispositions, of the citations for excessive speed and careless or negligent driving that were issued to [Plaintiff] on November 23, 2018. This topic includes the issuance of a bench warrant in connection with the citations."

(Doc. 14-1). The Board also sought information relating to the facts underlying Plaintiff's complaint about the federal judge—but not the confidential administrative proceedings themselves—as well as approximately ten other lawsuits that Plaintiff

failed to disclose on his April 16, 2020 Florida bar application. (Doc. 3-2; Doc. 14-

1).

On February 19, 2021, Plaintiff sent a letter to Defendants in which he stated

that at the hearing scheduled by the Board he could not address the administrative

proceedings that he had initiated against the federal judge. (Doc. 12 at ¶ 23). Plaintiff

also stated that he would not attend the hearing, and he asked the Board to withdraw

its request for Plaintiff's attendance at the hearing. (*Id.* at ¶ 24).

Defendants refused to withdraw their request for an investigative hearing. (*Id.*

at ¶ 25; Doc. 12-3). In a letter, they informed Plaintiff:

> The Florida Board of Bar Examiners received your letter dated
> February 19, 2021, declining the board's request for your appearance
> at an investigating hearing. . . .
>
> The board has requested your appearance at an investigative hearing
> under rule 3-22 of the Rules of the Supreme Court Relating to
> Admissions to the Bar. I direct your attention to rule 3-22.2 which
> states:
>
> 3-22.2 - Response and Selection of a Preferred Hearing Date. An
> applicant or registrant who has been requested to appear for an
> investigative hearing **must promptly respond to written notice from
> the board and give notice of preferred dates**. Failure to respond
> within 60 days will result in termination of the application for non-
> compliance as provided in rule 3-14.6.
>
> Your options are to: (1) select a date for your investigation hearing
> within 60 days of the Notice to Appear for Investigative Hearing; (2)
> request an extension of a specified period of time to select an
> investigate hearing date; or (3) withdraw your application until you are

ready to appear at the hearing and pursue admission to The Florida Bar. If you withdraw, your file will be placed on inactive status.

A failure to select one of those options by April 19, 2021, will result in the termination of your file under rule 3-14.6(a) and rule 3-22. If your file is terminated, you will be required to reapply and pay all fees as if you were applying for the first time.

(Doc. 12-3).

Plaintiff informed Defendants that he intended to file the instant civil action. In response, Defendants assured Plaintiff that they would not terminate his application "at this time to preserve the status quo." (Doc. 14-5). Thus, despite three years passing from the date Plaintiff submitted his application, Defendants have not "admit[ed] and/or certif[ied] Plaintiff for admission." (Doc. 12 at ¶ 32).

In this action filed pursuant to 42 U.S.C. § 1983, Plaintiff alleges that Defendants Gavagni and Almon violated Plaintiff's constitutional rights. Plaintiff's amended verified complaint characterizes his claims as follows:

- **Count 1:** "'Facial' and 'As-Applied' Constitutional Challenge to the 'Rules of the Supreme Court Relating to Admission to the Bar' pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a) and 42 U.S.C. § 1983."

- **Count 2:** "Ex Parte Young Declaratory and Injunctive Relief."

- **Count 3:** "First Amendment—Retaliation Express Right of Action under 42 U.S.C. § 1983."

- **Count 4:** "Fourteenth Amendment—Procedural Due Process Express Right of Action under 42 U.S.C. § 1983."

- **Count 5:** "Supremacy Clause Implied Right of Action."

For relief, Plaintiff requests that the District Court "[i]ssue a mandatory injunction and order permanently barring and enjoining Defendants from further engaging in such unlawful conduct"; declaratory relief; and actual, compensatory, and punitive damages. (Doc. 12 at 20-21). Plaintiff seeks monetary damages against Defendants only in their individual capacities. (*Id.* at 21).

## II. STANDARD

Motions to dismiss for failure to state a claim are governed by Rule 12(b)(6) of the Federal Rules of Civil Procedure. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation and citation omitted); *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1051 (11th Cir. 2015).

A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation and citation omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). The pleader is not entitled to relief "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* (citing Fed. R. Civ. P. 8(a)(2)). Bare assertions that amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Id.* at 681 (citation omitted). Additionally, the court may dismiss a claim when the allegations of the complaint show that an affirmative defense—such as a defendant's immunity from suit—bars recovery on the claim. *Sibley v. Lando*, 437 F.3d 1067, 1070 n.2 (11th Cir. 2005).

## III. DISCUSSION

### A.   Plaintiff's Claims for Declaratory and Injunctive Relief Should Be Dismissed Pursuant to the *Younger* Abstention Doctrine

Defendants argue that the District Court should dismiss Plaintiff's claims for injunctive and declaratory relief based on the abstention doctrine articulated in *Younger v. Harris*, 401 U.S. 37 (1971). (Doc. 14 at 9, 16).

In *Younger*, the Supreme Court held that a federal court should not enjoin a pending state criminal proceeding unless an injunction is necessary to prevent great

and immediate irreparable injury.[4] 401 U.S. at 53-54. As the Supreme Court stated: "[T]he normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions." *Id.* at 45. The Supreme Court's *Younger* decision was based on a strong federal policy against federal-court interference with pending state judicial proceedings. *Id.* at 44 ("[T]he National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways."); *Green v. Jefferson Cnty. Comm'n*, 563 F.3d 1243, 1250 (11th Cir. 2009). The *Younger* Court noted that abstention was necessary to afford "proper respect for state functions" and legitimate state interests. *Younger*, 401 U.S. at 44.

The Supreme Court subsequently extended the rationale of *Younger* to civil and administrative proceedings that involve important state interests. *See, e.g.*, *Ohio C.R. Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 627 (1986); *Middlesex Cnty. Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982). In such cases, by "abstaining from exercise of their jurisdiction, the federal courts promote the value of comity between the states and the federal government and avoid

---

[4] *Younger* also applies to "declaratory judgments that would effectively enjoin state proceedings." *Old Republican Union Ins. Co. v. Tillis Trucking Co.*, 124 F.3d 1258, 1261 (11th Cir. 1997) (citing *Samuels v. Mackell*, 401 U.S. 66, 73 (1971)); *see Huffman v. Pursue, Ltd.*, 420 U.S. 592, 602 n.16 (1975); *Sundy v. Friendship Pavilion Acquisition Co.*, 807 F. App'x 977, 981 (11th Cir. 2020).

unnecessary determinations of federal constitutional questions." *Liedel v. Juv. Ct. of Madison Cnty., Ala.*, 891 F.2d 1542, 1546 (11th Cir. 1990); *First Ala. Bank of Montgomery, N.A. v. Parsons Steel, Inc.*, 825 F.2d 1475, 1483 (11th Cir. 1987).

*Younger* abstention applies to "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 367-68 (1989). "Proceedings necessary for the vindication of important state policies or for the functioning of the state judicial system also evidence the state's substantial interest in the litigation," and federal courts should abstain from hearing federal cases that would interfere with such proceedings. *Middlesex Cnty.*, 457 U.S. at 432. Consistent with *Younger*, the Supreme Court has held that federal courts generally should abstain from hearing cases that involve state bar disciplinary proceedings that are within the constitutionally prescribed jurisdiction of a State's supreme court. *Id.*

In so holding, the Supreme Court recognized "the important state obligation to regulate persons who are authorized to practice law." *Id.* at 432-33. A State has "an extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses. States traditionally have exercised extensive control over the professional conduct of attorneys." *Id.* at 434. "The establishment of criteria for determining the intellectual competence, academic preparedness, and moral fitness of persons who petition the court for the privilege of undertaking the

confidential trust of serving the court as one of its professional officers has always been a function confined to the courts themselves." *Sparks v. Character & Fitness Comm. of Ky.*, 859 F.2d 428, 434 (6th Cir. 1988). "A bar composed of lawyers of good character is a worthy objective . . . ." *Konigsberg v. State Bar of Cal.*, 353 U.S. 252, 273 (1957). "The judiciary as well as the public is dependent upon professionally ethical conduct of attorneys and thus has a significant interest in assuring and maintaining high standards of conduct of attorneys engaged in practice." *Middlesex Cnty.*, 457 U.S. at 434.

Therefore, federal courts generally should abstain from hearing cases involving such proceedings unless there is a "showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate." *Id.* at 435; *Stoddard v. Fla. Bd. of Bar Exam'rs*, 509 F. Supp. 2d 1117, 1121 (N.D. Fla. 2006), *aff'd*, 229 F. App'x 911 (11th Cir. 2007); *Lawrence*, 2005 WL 2491564, at *2.

Accordingly, *Younger* would call for abstention only if: (1) the federal civil action would interfere with certain ongoing state judicial or administrative proceedings; (2) the state proceedings implicate important state interests; (3) the underlying state proceedings afford litigants an adequate opportunity to raise federal claims; and (4) there is no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate. *Middlesex*

*Cnty.*, 457 U.S. at 432; *Tokyo Gwinnett, LLC v. Gwinnett Cnty., Ga*, 940 F.3d 1254, 1268 (11th Cir. 2019); *31 Foster Child. v. Bush*, 329 F.3d 1255, 1274 (11th Cir. 2003); *Old Republic Union Ins. Co.*, 124 F.3d at 1261.[5]

### 1.   *Proceedings for Plaintiff's Admission to the Bar Are Ongoing*

In determining whether there is an ongoing state proceeding, courts must look "to the start and progression of the federal litigation as compared to the start and progression of the state litigation." *Tokyo Gwinnett, LLC*, 940 F.3d at 1268 (citing *For Your Eyes Alone, Inc. v. City of Columbus, Ga.*, 281 F.3d 1209, 1217 (11th Cir. 2002)). "The date of filing of the federal complaint is the relevant date for purposes of determining *Younger*'s applicability." *Liedel*, 891 F.2d at 1546 n.6. A "state proceeding is considered 'ongoing' for *Younger* purposes" when the "state proceeding was pending at the time the federal suit was filed." *Tokyo Gwinnett, LLC*, 940 F.3d at 1268 (citing *Jones v. Wade*, 479 F.2d 1176, 1181 n.6 (5th Cir. 1973)).

---

[5] Plaintiff argues that *Younger* is not applicable to his case because in *Sprint Communications v. Jacobs*, 571 U.S. 69 (2013), the Supreme Court narrowed the breadth of *Younger*. (Doc. 20 at 2). In *Sprint*, the Supreme Court held that the district court erred in abstaining from addressing a civil action brought by Sprint against the Iowa Utilities Board to challenge the imposition of a fee. *Id.* at 72. The Court cautioned federal courts not to extend *Younger* beyond the breadth prescribed by the Supreme Court. *Id.* at 73. But *Sprint* does not hold that *Younger* does not apply to state-court proceedings involving admission to a State bar. Plaintiff's interpretation of *Sprint* simply is incorrect.

The lack of a final judgment by the state court is also relevant to this analysis. *Page v. King*, 932 F.3d 898, 902 (9th Cir. 2019).

Plaintiff submitted his application to the Florida Bar on February 16, 2018. In February 2021, Defendants initiated an informal investigative hearing against Plaintiff. On April 15, 2021, Defendants notified Plaintiff that they would not terminate Plaintiff's bar application to maintain the status quo. In other words, his application remains pending and no state court or administrative body has issued a final judgment. Plaintiff filed the instant lawsuit on April 16, 2021. (Doc. 1). Therefore, Plaintiff's proceedings for admission to the Florida Bar were ongoing state judicial proceedings at the time he filed this federal action,[6] and they remain ongoing.

## 2.    *The Florida Bar Proceedings Implicate an Important State Interest*

There is no serious dispute that the Florida Bar admission proceedings— specifically character and fitness hearings—implicate an important state interest for purposes of *Younger*. "The importance of a state interest may be demonstrated by

---

[6] Plaintiff's proceedings for admission to the Florida Bar are judicial in nature. Fla. Bar Admission R. 1-11 ("The admission of attorneys to the practice of the profession is a judicial function."); *Dale v. Moore*, 121 F.3d 624, 626 (11th Cir. 1997) (noting that the Florida Supreme Court's confirmation of the Board's recommendation to accept an applicant's application to the Florida Bar is a judicial proceeding); *Lawrence*, 2005 WL 2491564, at *2 ("Florida bar admission proceedings . . . are judicial in nature.").

the fact that the proceedings sought to be enjoined are . . . necessary for the vindication of important state policies or the functioning of the state judicial system." *First Ala. Bank of Montgomery, N.A.*, 825 F.2d at 1483. The ostensible purpose of the Board's character and fitness investigation and bar admission process "is to protect the public and safeguard the judicial system." *Lawrence*, 2005 WL 2491564, at *1 (citing Fla. Bar Admission R. 1-14.1); *Stoddard*, 509 F. Supp. 2d at 1121. As noted above, the Supreme Court opined that a State has "an extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses." *Middlesex Cnty.*, 457 U.S. at 434; *see The Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 625 (1995) ("We have little trouble crediting the [Florida] Bar's interest [in regulating its lawyers] as substantial."); *Kirkpatrick v. Shaw*, 70 F.3d 100, 103 (11th Cir. 1995) ("States have a compelling interest in the practice of professions within their boundaries, and . . . [t]he interest of the States in regulating lawyers is especially great since lawyers are essential to the primary governmental function of administering justice, and have historically been 'officers of the courts.'") (quoting *Goldfarb v. Va. State Bar*, 421 U.S. 773, 792 (1975)); *Dugas v. City of Harahan, La.*, 978 F.2d 193, 198 (5th Cir. 1992) ("[I]t is vitally important for Florida to ensure the good character and fitness of its Bar applicants. To this end, the Florida Supreme Court established the Board as an arm of the court to thoroughly screen Bar applicants.").

### 3.    *Plaintiff Enjoys Adequate Opportunities to Raise Federal Claims*

A plaintiff bears the burden of establishing that the state proceedings do not provide an adequate remedy for his federal claims. *31 Foster Child.*, 329 F.3d at 1279; *Butler v. Ala. Jud. Inquiry Comm'n*, 261 F.3d 1154, 1159 (11th Cir. 2001). A federal court "should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987).

Here, the Florida Bar admissions rules specify that an applicant who is dissatisfied with the Board's recommendation concerning an applicant's character and fitness may petition the Supreme Court of Florida. Fla. Bar Admission R. 3-40.1. Additionally, an applicant may petition the Supreme Court of Florida if the character and fitness investigation has not been completed within nine months from the date of the submission of a completed "Bar Application" or "Registrant Bar Application." Fla. Bar Admission R. 3-40.2.

Accordingly, a Florida Bar applicant's constitutional claims can be "presented fully and fairly for determination by the Florida Supreme Court" and, if dissatisfied with the Florida Supreme Court's decision, an applicant may seek review "in the United States Supreme Court by petition for writ of certiorari." *Lawrence*, 2005 WL 2491564, at *4; *Wilson v. Gavagni*, No. 4:08-cv-361-SPM/WCS, 2009 WL 3055348, at *6 (N.D. Fla. Sept. 21, 2009) (noting that the bar admission "provides

an applicant in Plaintiff's situation with a full and fair opportunity to raise federal claims and constitutional challenges"); *see Dale*, 121 F.3d at 627 (noting that an applicant "who is dissatisfied with the Board's recommendation" is permitted to file a petition with the Florida Supreme Court for review); *cf. Fla. Bd. of Bar Exam'rs re: Applicant*, 443 So. 2d 71, 72 (Fla. 1984) (adjudicating a federal due process claim raised by an applicant to the Florida Bar). Therefore, Plaintiff has not demonstrated that he lacks an adequate opportunity to raise Constitutional claims in the Florida judicial proceeding.

    **4.**    ***Plaintiff Failed to Establish the Bad Faith Exception to* Younger**

Pursuant to *Younger*, a court should not abstain from adjudicating a federal case when there is evidence that the state proceeding is motivated by bad faith. *Hughes v. Att'y Gen. of Fla.*, 377 F.3d 1258, 1263 n.6 (11th Cir. 2004); *Redner v. Citrus Cnty., Fla.*, 919 F.2d 646, 650 (11th Cir. 1990); *see Middlesex Cnty.*, 457 U.S. at 435; *Moore v. Sims*, 442 U.S. 415, 432 (1979); *Huffman*, 420 U.S. at 611. Plaintiff argues that the "bad faith" exception applies in this case because he has alleged that Defendants were motivated by bad faith and were retaliating against him for engaging in protected speech. (Doc. 20 at 8).

Although "the Supreme Court has not ruled out use of the bad faith exception in civil cases, it has never directly applied the exception in such a case." *Aaron v. Target Corp.*, 357 F.3d 768, 778 (8th Cir. 2004) (internal citation omitted). But even

assuming that the bad faith exception applies to proceedings of a state bar, the bad faith exception is a narrow one, which principally applies to "cases of proven harassment . . . by state officials in bad faith." *Perez v. Ledesma*, 401 U.S. 82, 85 (1971); *Bristol-Meyers Squibb Co. v. Connors*, 979 F.3d 732, 738 (9th Cir. 2020); *McNatt v. Texas*, No. 93-2925, 1994 WL 558769, at *1 (5th Cir. Sept. 19, 1994) (unpublished).

To establish bad faith, a plaintiff must show that a defendant has no "reasonable expectation" of prevailing in the state proceedings. *Kugler v. Helfant*, 421 U.S. 117, 126 n.6 (1975); *Baffert v. Cal. Horse Racing Bd.*, 332 F.3d 613, 621 (9th Cir. 2003); *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 199 (2d Cir. 2002); *Redner*, 919 F.2d at 650. A bald assertion of ill will or a retaliatory motive is insufficient. *Phelps v. Hamilton*, 59 F.3d 1058, 1067 (10th Cir. 1995). "Mere conclusory allegations . . . are insufficient to overcome *Younger*—a plaintiff seeking to avoid *Younger* must affirmatively demonstrate the justification for application of an exception." *Kirschner v. Klemons*, 225 F.3d 227, 236 (2d Cir. 2000); *Wilson v. Thompson*, 593 F.2d 1375, 1383 (5th Cir. 1979).

Here, Plaintiff's allegations relating to the alleged retaliation are as follows:

10. On or around September 7, 2018, Plaintiff filed a certain complaint which initiated the non-public and confidential proceeding . . . .

. . .

13. With the written permission of the appropriate persons, Plaintiff timely provided written notice of the above-mentioned proceedings to Defendants.[7]

14. In addition, and in connection with the same subject matter as above-reference federal proceeding, Plaintiff also brought a civil action in federal court.

. . .

17. [I]nstead of timely certifying, recommending, and/or approving Plaintiff for admission to the Florida Bar, in the spring of 2021, Defendants opted to retaliate against [Plaintiff] for having initiated the above-referenced federal proceedings.

18. [O]n or about February 18, 2021—*i.e.*, **three (3) years** after Plaintiff's submission of his bar petition—Defendants electronically served Plaintiff with a "Notice to Appear for Investigative Hearing."

. . .

20. The actual, sole purpose of Defendants' "Investigative Hearing"—a hearing which they belatedly initiated three (3) years after the initial filing of the bar petition—was to  retaliate against [Plaintiff] for having initiated the above-referenced judicial proceedings, and to unlawfully coerce him into withdrawing the subject complaints therein.

21. Defendants all knew, or had reason to know, that there was no just cause and no lawful grounds for such an "Investigative Hearing."

22. Defendants' sole motive therefor [sic] was to harass, retaliate against, intimidate, and coerce [Plaintiff] into withdrawing the above-referenced complaints.

---

[7] Plaintiff references the letter in which he declined to attend the hearing, which is dated February 19, 2021. He does not, however, specify at what point Defendants became aware of Plaintiff's litigation. Indeed, the oldest exhibit attached to Plaintiff's complaint is dated June 20, 2020, which is approximately thirty (30) months after Plaintiff filed his bar application.

(Doc. 12 at ¶¶ 10, 13-14, 17-18, 20-22). In his response to Defendants' motion to dismiss, Plaintiff does not include any additional factual allegations which indicate that the "bad faith" exception applies. (Doc. 20 at 8).

Plaintiff offers only conclusory assertions to carry his burden of demonstrating that Defendants were and are acting in bad faith. Plaintiff fails to provide concrete allegations to support his conclusory assertions. He has not alleged facts which indicate that Defendants have no reasonable expectation of prevailing in the state proceedings. Rather, the record indicates that Defendants had legitimate reasons to question Plaintiff's character and fitness to practice law. (Doc. 14-1). Thus, Plaintiff has failed to allege facts which indicate that Defendants made their decisions in bad faith.[8] *See Crenshaw v. Sup. Ct. of Ind.*, 170 F.3d 725, 729 (7th Cir. 1999) ("In order to establish her entitlement to the bad faith exception to the *Younger* doctrine, [the plaintiff] must allege specific facts to support her inferences of bad faith . . . ."). Plaintiff simply has not made allegations of bad faith sufficient to

---

[8] No evidentiary hearing is necessary in this case because the undersigned accepts Plaintiff's well-pleaded factual allegations as true, but not his conclusory assertions. *Thompson v. Fla. Bar*, 526 F. Supp. 2d 1264, 1277 (S.D. Fla. 2007) (noting that an evidentiary hearing on the bad faith exception is not warranted when the court accepts the well-pleaded factual allegations of the complaint as true) (citing *Stewart v. Dameron*, 448 F.2d 396, 397 (5th Cir. 1971)).

invoke the "bad faith" exception to *Younger*.[9] *See Lawrence v. Carlin*, 541 F. Supp. 2d 189, 194-95 (D.D.C. 2008).

Accordingly, because the *Younger* abstention doctrine applies to this case, the District Court should dismiss Plaintiff's claims to the extent that Plaintiff seeks a declaratory judgment and seeks to enjoin Defendants from further engaging "in such unlawful conduct." (Doc. 12 at 21).

## B. Defendants are Entitled to Absolute Quasi-Judicial Immunity with Respect to Plaintiff's Claims for Damages

With respect to Plaintiff's claims for damages from Defendants in their individual capacities, Defendants argue that they are entitled to quasi-judicial immunity. (Doc. 14 at 18).[10]

---

[9] Plaintiff also has not shown that this case presents any "extraordinary circumstances." For example, he has not shown that the Board is relying on rules that are "fragrantly and patently violative of express constitutional prohibitions in every clause, sentence, and paragraph, and in whatever manner and against whom an effort might be made to apply it." *Younger*, 401 U.S. at 53-54. Nor has he shown that the Board itself—or the Florida Supreme Court—would be incompetent by reason of bias to adjudicate the issues before it. *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973).

[10] Plaintiff argues that the District Court cannot consider quasi-judicial immunity in a motion to dismiss. Plaintiff is incorrect. A plaintiff fails to state a claim upon which relief can be granted when judicial or quasi-judicial immunity precludes a claim. *Murphy v. Stacy*, 809 F. App'x 677, 681-82 (11th Cir. 2020) (first citing *Sibley*, 437 F.3d at 1070 n.2; then citing *LaFrere v. Quezada*, 582 F.3d 1260, 1263 (11th Cir. 2009)); *Prop. Mgmt. & Inv., Inc. v. Lewis*, 752 F.2d 599, 602-03 (11th Cir. 1985).

"When officials are threatened with personal liability for acts taken pursuant to their official duties, they may well be induced to act with an excess of caution or otherwise to skew their decisions in ways that result in less than full fidelity to the objective and independent criteria that ought to guide their conduct." *Forrester v. White*, 484 U.S. 219, 224-26 (1988). To prevent this, the law affords some government officials immunity from suit. For example, the Supreme Court has held that the adjudicative function that judges perform requires that they be immune from suit for damages. *Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978). Judicial immunity, therefore, provides judges absolute immunity from suits arising from acts taken in their judicial capacity unless they acted in the clear absence of all jurisdiction. *Id.* at 357; *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000).

The Supreme Court has extended this immunity to government officials who perform quasi-judicial duties. *See Forrester*, 484 U.S. at 225-26. Quasi-judicial immunity affords "protection from suit to officials who are 'intimately associated with the judicial'" process. *Washington v. Rivera*, 939 F.3d 1239, 1243 (11th Cir. 2019) (quoting *Hughes v. Chesser*, 731 F.2d 1489, 1490 (11th Cir. 1984)); *Roland v. Phillips*, 19 F.3d 552, 555 (11th Cir. 1994). Under judicial or quasi-judicial immunity, therefore, a defendant is entitled to *absolute* immunity. *Roland*, F.3d at 555. But an "official seeking absolute immunity bears the burden of showing that

such immunity is justified for the function in question." *Burns v. Reed*, 500 U.S. 478, 486 (1991).

To determine whether a particular government official is entitled to quasi-judicial immunity, a court must apply a functional analysis and ascertain whether the action taken by the official has an integral relationship with the judicial process. *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435-36 (1993); *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *Roland*, 19 F.3d at 555. That is, the court must look to the "nature of the responsibilities of the individual official" to determine whether the official was exercising a sufficiently judicial function. *Cleavinger v. Saxner*, 474 U.S. 193, 201 (1985); *see Forrester*, 484 U.S. at 224; *Washington*, 939 F.3d at 1243. Using this approach, courts have extended quasi-judicial immunity to officials intimately connected to the judicial process, including federal hearing examiners and administrative law judges. *See Cleavinger*, 474 U.S. at 200; *Imbler*, 424 U.S. at 430.

In this case, Plaintiff is suing Defendants solely for their conduct in carrying out their duties as Executive Director and General Counsel of the Board to the extent they addressed Plaintiff's application for admission to the Florida Bar. Defendants derive their authority to address applications to the Florida Bar from the Florida Supreme Court. Fla. Bar Admission R. 1-13 ("The [Board] is an administrative agency of the Supreme Court of Florida created by the court to implement the rules

relating to bar admission."); *Dugas*, 978 F.2d at 198 (noting that the "the Florida Supreme Court established the Board as an arm of the court to thoroughly screen Bar applicants"). Plaintiff concedes that Defendants are "both tasked with, *inter alia*, the enforcement of the 'Rules of the Supreme Court relating to Admissions to the Bar' of the State of Florida," that they were responsible for the processing of his application to the Florida Bar, and that they were responsible for initiating his informal character and fitness investigative hearing. (Doc. 12 at ¶¶ 8-9, 19).

The processing of an application to practice in a State's courts is a judicial function. The "power to determine eligibility for membership in the bar has historically been reposed exclusively in the courts." *Sparks*, 859 F.2d at 434. "The establishment of criteria for determining the intellectual competence, academic preparedness, and moral fitness of persons who petition the court for the privilege of undertaking the confidential trust of serving the court as one of its professional officers has always been a function confined to the courts themselves." *Id.* "Federal courts have consistently held, as a matter of federal law, that admission to a jurisdiction's bar is neither a legislative, administrative, nor ministerial act, but is peculiarly a judicial function, for it is within the exclusive province of the judiciary to determine who is to be permitted to practice before the courts." *McFarland v. Folsom*, 854 F. Supp. 862, 875 (M.D. Ala. 1994). When the supreme court of a State issues a final order excluding an applicant from practicing law, that order is a judicial

order reviewable—to the extent an applicant claims constitutional infirmity—only by the United States Supreme Court. *See Schware v. Bd. of Bar Exam'rs of the State of N.M.*, 353 U.S. 232, 238 (1957); *In re Summers*, 325 U.S. 561, 568-69 (1945).

With respect to Florida in particular, the Florida Constitution states: "The supreme court shall have exclusive jurisdiction to regulate the admission of persons to the practice of law and the discipline of persons admitted." FLA. CONST. art. V, § 15. It also is undisputed that the Board "is an agency of the Florida Supreme Court created for the purpose of regulating the admission of persons to practice law within the State." *Diaz v. Moore*, 861 F. Supp. 1041, 1049 n.23 (N.D. Fla. 1994); Fla. Bar Admission R. 1-11, 1-13. The Board's recommendation to the Florida Supreme Court to accept or reject an application for admission to the Florida Bar is a "judicial proceeding." *Dale*, 121 F.3d at 626. In Florida, therefore, "bar admissions, bar disciplinary actions, and disbarments are essentially judicial in nature." *Norkin v. Fla. Bar*, 311 F. Supp. 3d 1299, 1305 (S.D. Fla. 2018) (quoting *Matter of Calvio*, 88 F.3d 962, 965 (11th Cir. 1996)).

More specifically, actions of the Board regarding the processing of bar applications, evaluation of the character and fitness of applicants, and recommendation to the Florida Supreme Court to admit or deny admission to applicants are integrally judicial in nature. *Diaz*, 861 F. Supp. at 1049. Defendants—

who are officials assigned to perform these functions—therefore are intimately connected to the judicial process. As one court explained:

> The act of considering an application to the bar is a judicial act. And it is no less a judicial act simply because it is performed by nonjudicial officers in whom the responsibility for the performance of such duties is lawfully delegated by the judiciary. Therefore, those who perform those duties on behalf of the judiciary are entitled to the same judicial immunity as would be enjoyed by judicial officers performing the same act.

*Id.* (quoting *Sparks*, 859 F.2d at 431).

Accordingly, Defendants are entitled to absolute quasi-judicial immunity for their functions and actions relating to Plaintiff's application to the Florida Bar. *See Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993) (holding that members of the Florida Bar attorney grievance committees were entitled to absolute immunity because they were acting as agents of the Florida Supreme Court). Because Defendants, in their individual capacities, are entitled to absolute quasi-judicial immunity, the District Court should dismiss Plaintiff's claims to the extent he seeks damages from Defendants in their individual capacities. *See Washington*, 939 F.3d at 1243 (noting that when a defendant is engaging in a sufficiently judicial function, the defendant is entitled to absolute immunity).[11]

---

[11] Because Plaintiff's claims are precluded by *Younger* and quasi-judicial immunity, the undersigned did not address Defendant's other arguments, namely Eleventh-Amendment immunity, qualified immunity, and failure to state a claim upon which relief can be granted.

**C.**     <u>**Plaintiff's Motion for Leave to Amend Count Four of His Complaint**</u>

Finally, Plaintiff moves to amend Count Four of his complaint to state a claim for a violation of "substantive" due process. (Doc. 27). For the reasons discussed above, any due-process claim—whether characterized as "substantive" or otherwise—is barred by the *Younger* abstention doctrine and absolute quasi-judicial immunity. Plaintiff cannot plead facts that would prevent application of *Younger* and absolute quasi-judicial immunity, which means that Plaintiff's proposed amendment of Count Four would be futile. Thus, the undersigned recommends that the District Court deny Plaintiff's motion for leave to amend Count Four.

**IV. CONCLUSION**

Because Plaintiff's claims for injunctive and declaratory relief are barred by *Younger v. Harris*, 401 U.S. 37 (1971), and Defendants enjoy absolute quasi-judicial immunity from Plaintiff's claims for damages, the undersigned respectfully **RECOMMENDS** that:

1.     Plaintiff's Motion for Leave to Amend Count Four (Doc. 28) be **DENIED** because any amendment would be futile.

2.     Defendants' Motion to Dismiss (Doc. 14) be **GRANTED**.

3.     Plaintiff's claims for declaratory and injunctive relief be dismissed without prejudice.

4.     Plaintiff's claims for damages be dismissed.

    5.      The clerk of the court terminate all pending motions and close the case file.

At Pensacola, Florida, this <u>14th</u> day of October, 2021.

/s/ *Michael J. Frank*

**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636. If the parties dispute the accuracy of any facts taken from judicially-noticed documents, or if they otherwise wish to be heard on the propriety of the court taking judicial notice of those facts, they must raise this issue in an objection to this report and recommendation.**